David L. HYPES, et al.,

v.

FIRST COMMERCE CORPORATION.

Civil Action No. 95–2759.

United States District Court,
E.D. Louisiana.

Aug. 27, 1996.

Order Denying Reconsideration,
Oct. 10, 1996.

---

William H. Reinhardt, Jr., William Martin McGoey, Metairie, LA, for Plaintiffs–Appellants.

Thomas J. McGoey, II, Robert B. Worley, Jr., the Kullman Firm, New Orleans, LA, for Defendant–Appellee.

### ORDER AND REASONS

FELDMAN, District Judge.

Before the Court is the defendant's motion for summary judgment. For the reasons that follow, the motion is GRANTED.

#### Background

David L. Hypes sues his former employer, First Commerce Corporation (FCC), for wrongful discharge. Hypes claims that FCC violated the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.*, the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623 *et seq.*, the Louisiana Age Discrimination in Employment Act, La.Rev.Stat.Ann. § 23:971 *et seq.* (West 1985), the Louisiana Civil Rights Act for Handicapped Persons (LCRHP), La.Rev.Stat.Ann. § 46:2251 *et seq.* (West 1982), and other state law prohibitions against age and disability discrimination. The plaintiff also contends that his wife and daughter are entitled to damages for loss of consortium, under state law.

Hypes was hired by FCC on February 11, 1993 when he was 51 years old. On April 27, 1994 the plaintiff's team leader, Bill Burnell, and the Independent Review Services Team Leader, Kim Lee, met with the plaintiff to

discuss his unsatisfactory performance.[1] During the meeting, Lee and Burnell both noted that Hypes had been excessively absent and late without excuse. The team leaders also informed the plaintiff that he had taken too long to complete reports and projects.

After the meeting, Hypes was reassigned to a different section of the company. FCC says that the change was prompted by Hypes' inaccurate time reports and FCC's conclusion that Hypes needed more supervision. The plaintiff was also warned that if his performance did not improve he could face additional measures, including further reassignment or termination. The plaintiff agreed he would improve his performance, provide a confirmation from a physician if he was absent from work, and inform Burnell, when he knew in advance, that he would be absent.

On July 1, 1994 the plaintiff began tracking his own attendance. His own notes reflect that he did not work for seven days, and worked only half days for five days during the period of July 1, 1994 to August 8, 1994. From August 8, 1994 to September 13, 1994 he did not report to work at all.

On August 11, 1994 the plaintiff provided FCC with a letter from his doctor. The letter stated that the plaintiff was seen six days earlier for treatment for difficulty breathing. The plaintiff was found to suffer with chronic obstructive lung disease. He was later hospitalized for tests. After the tests, his physician was unable to determine when the plaintiff could return to work, but assured FCC that his absence was only temporary. On September 9, 1996 Hypes' doctor advised FCC that the plaintiff could return to work on September 12, 1994.[2]

The plaintiff returned to work on September 13, 1994. The following day, he met with Lee and Marilyn Mays, FCC's Employee's Relation Manager, to discuss expectations about his attendance and performance. The

plaintiff was told that he was expected to have regular and punctual attendance unless his doctor certified that the plaintiff required special accommodations. As a result, the plaintiff's doctor advised FCC that Hypes' condition would have a bearing on his job performance; the doctor stated that Hypes would be unable to travel, but did not suggest any further limitations.

During the next two and one half months, Hypes continued to miss work. In fact, he missed nine full days and 17 half days. Despite the plaintiff's continued absences, he did not provide medical documentation. In fact, the plaintiff admits that he went to North Carolina to attend a football game in mid-November, shortly before his termination in December. According to the defendant, the plaintiff was terminated because of excessive absences. The plaintiff filed suit claiming that his termination was motivated by age, disability and illness discrimination in violation of federal and state laws. FCC now moves for summary judgment.

## I. *Standard for Summary Judgment*

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *See id.* Therefore, "[i]f the evidence is

---

1. The events of this meeting have been reduced to a memorandum, the accuracy of which is not in dispute.

2. During this extended period of absence, the plaintiff was placed on disability leave. FCC informed the plaintiff that he was eligible for short-term disability benefits for the period of August 8, 1994 to August 26, 1994. Hypes was also advised that he could use his vacation pay to cover an additional two weeks of absence through September 9, 1994.

merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249–50, 106 S.Ct. 2505 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. *See Donaghey v. Ocean Drilling & Exploration Co.,* 974 F.2d 646, 649 (5th Cir.1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. *Id.* Hearsay evidence and unsworn documents do not qualify as competent opposing evidence. *Martin v. John W. Stone Oil Distrib., Inc.,* 819 F.2d 547, 549 (5th Cir.1987). Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

## II. *Application*

### A. ADA Claims

■ To make out a prima facie case under the ADA, one must establish that: (1) he suffers from a disability; (2) he is qualified for the job; (3) he was subject to an adverse employment action; and (4) he was replaced by a non-disabled person or was treated less favorably than a non-disabled person. *Daigle v. Liberty Life Ins. Co.,* 70 F.3d 394, 396 (5th Cir.1995); *see also Judice v. Hospital Serv. Dist. No. 1,* 919 F.Supp. 978, 981 (E.D.La.1996). Once the plaintiff has made out a prima facie case, the burden shifts to the defendant to " 'articulate some legitimate nondiscriminatory reason' " for its action that adversely affected the employee. *Id.* (quoting *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). If the employer does so, the burden returns to the plaintiff to show that the reason given is a pretext for discrimination. *Id.*

■ The defendant contends that the plaintiff cannot make out a prima facie case because he is not qualified for the job as required by the ADA. Under the ADA, a "qualified individual" is a person with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that the person holds or desires. 42 U.S.C. § 12111(9)(A). Employers who fail to provide reasonable accommodation to the known physical or mental limitations of a qualified individual with a disability commit unlawful discrimination unless the accommodation would result in undue hardship. 42 U.S.C. § 12112(b)(5)(A). Reasonable accommodations include, but are not limited to, the following things: (1) making facilities accessible and usable; (2) acquisition or modification of equipment or devices; (3) job restructuring; (4) part-time or modified work schedules; and (5) reassignment to a vacant position. 42 U.S.C. § 12111(9)(A) and (B).

■ The ADA, however, does not require an employer to accommodate an employee who is not qualified for the job. An employee who cannot perform the essential functions of the position, with or without accommodation, is not a qualified individual. The defendant argues that the plaintiff was not qualified because he did not regularly report for work. It is undisputed that many of the plaintiff's absences can be traced to his chronic lung disease. Also, the plaintiff's performance while on the job has not been questioned. In fact, criticism of the plaintiff's performance is related to his absences, not to the quality of his work when he worked. For example, the plaintiff was often behind in his projects, a fact directly attributable to his poor attendance.

The defendant correctly urges that a disabled employee cannot establish that he is qualified under the ADA without demonstrating that he can maintain a reliable attendance. Several courts have held that where attendance is an essential aspect of the job, an individual who has frequent absences is unqualified. *See Jackson v. Veterans Admin.,* 22 F.3d 277 (11th Cir.1994) (housekeeping aide who missed several days of work was not qualified because his sporadic attendance rendered him incapable of performing daily tasks); *Kennedy v. Applause, Inc.,* No. CV 94–5344, 1994 WL 740765 (C.D.Cal. Dec.6, 1994) (sales representative suffering

from chronic fatigue syndrome who was unable to work regular hours was unqualified because reliable attendance was a minimum function of the job), *aff'd*, 90 F.3d 1477 (9th Cir.1996).

The Fourth Circuit addressed this issue in *Tyndall v. National Education Centers, Inc. of Cal.*, 31 F.3d 209 (4th Cir.1994). Mary Tyndall was hired as an instructor. She suffered from lupus erythematosus, an auto-immune system disorder that periodically made it impossible for her teach her classes. The defendant tried to accommodate Tyndall's condition by allowing her a more flexible schedule, to take breaks from classes, and to take sick leave. Tyndall, however, began to miss work even more frequently. Although many of her absences were a result of her medical condition, others were motivated by personal reasons. The Fourth Circuit held that Tyndall was not qualified under the ADA because of her chronic absences and because her job could not be performed away from the campus. *Id.* at 213.

The plaintiff argues that *Tyndall* is not applicable because unlike Ms. Tyndall, Hypes can do his job from his home. This point is disputed. The plaintiff claims that other workers took work home from time to time. On the other hand, FCC points out that because Hypes had to use confidential records to do his job it was impossible for him to work effectively out of his home for any extended period of time.

*Tyndall* helps to clarify the dispute. The Fourth Circuit stated on this point:

> In addition to possessing the skills necessary to perform the job in question, an employee must be willing and able to demonstrate these skills by coming to work on a regular basis. Except in the unusual case where an employee can effectively perform all work-related duties at home, an employee "who does not come to work cannot perform any of his job functions, essential or otherwise." Therefore, a regular and reliable level of attendance is a necessary element of most jobs.

*Id.* (quoting *Wimbley v. Bolger*, 642 F.Supp. 481, 485 (W.D.Tenn.1986), *aff'd*, 831 F.2d 298, 1987 WL 38643 (6th Cir.1987)). The Court finds the Fourth Circuit's reasoning direct and persuasive. The question is not whether some of the plaintiff's work can be done at home or at work, but whether he falls within the unusual group of individuals who can complete a material part of their tasks from their home. The undisputed facts do not support the position Hypes takes.

The plaintiff's work history is not limited to absences due to illness. He has also been reprimanded for falsifying records, not providing documentation for his absences and tardiness, and missing work for personal reasons (a college football game). Furthermore, by the plaintiff's own account, he could not foresee when he would be overcome by his illness. There is no evidence that the plaintiff completed any work at home while ill or otherwise. In fact, the record convincingly reveals that the plaintiff adopted at best a casual attitude about his job attendance.

By his own account, his illness did not materially affect his life until June 1994. But, his record of absences and tardiness had already commenced.[3] Even after his illness was diagnosed, his own doctor observed that Hypes should be able to complete a full schedule of work. Still, Hypes continued to miss work and, at times, failed to provide a doctor's explanation.

The plaintiff also is not a qualified individual under the ADA because he has not shown that FCC was required to accommodate him to address problems associated with his bad attendance record. The plaintiff must establish that FCC knew or should have known of plaintiff's mental or physical limitation. *Taylor v. Principal Financial Group, Inc.*, 93 F.3d 155, 162 (5th Cir.1996). It is important, however, to distinguish between a disability and a limitation. The employer must accommodate limitations, not disabilities. Not all disabilities limit people in the same way. *Id.* The ADA is designed to account for these differences by allowing an employer to fash-

---

3. It seems that Hypes developed his habit of missing work while at his previous job with Hibernia National Bank. At Hibernia, he was twice placed on probation for attendance problems.

ion an accommodation based on one's particular limitation.

■ But first an employer must have knowledge of the need for accommodation. 29 C.F.R. § 1630.9 (1995). In general, it is the responsibility of the employee to inform the employer of the need for some accommodation. 29 C.F.R. § 1630.9, App. (1995). When the employee's limitations are not open and obvious to the employer, the initial burden rests upon the employee or his health care provider to identify the limitation for the employer and the appropriate accommodations. *Taylor*, 93 F.3d at 165. "It simply stands to reason," the *Taylor* court said, "that the employee and his health-care provider are best positioned to know what type of accommodation is appropriate for the employee." *Id.*

What was FCC told? The plaintiff's doctor told FCC that his breathing disorder made his life more labored and prevented him from travelling; nothing else. His doctor did not identify any accommodations that would aid the plaintiff. Indeed, plaintiff's doctor has stated that the plaintiff should have been able to return to work for normal hours without the need for special allowances.

The plaintiff asserts that he requested accommodations, such as flexible hours, and that he be allowed to wear casual clothes to work. But when the need for accommodation is not obvious, the employer may require that the employee provide documentation. 29 C.F.R. § 1630.9 (1995). FCC asked Hypes to provide a doctor's certification of what accommodations he needed. Hypes' doctor only mentioned the restriction on travel. No other evidence in this record indicates that flexible hours or being allowed to wear casual clothes to work would have improved the plaintiff's poor attendance. In fact, the plaintiff's record itself betrays his argument.

The plaintiff was regularly absent and could not always certify that the absences were due to medical reasons. Indeed, he missed time to attend a football game outside Louisiana, despite his doctor's restrictions on travel. Furthermore, the plaintiff did nothing to demonstrate that flexible hours would allow him to do his work. His illness was unpredictable.

■ Essentially, the plaintiff is requesting an open-ended schedule to let him work when able. That hardly seems a reasonable accommodation in this case. It is undisputed that the plaintiff's work affects the schedule of others in his department. When he is late with an assignment, it jeopardizes the efficiency of the entire department. The ADA was not intended to hold businesses hostage to an employee who cannot do the fundamental functions of the job. *See Kennedy v. Applause, Inc.*, No. CV 94–5344, 1994 WL 740765 (C.D.Cal. Dec.6, 1994).

FCC did more than its share to accommodate the plaintiff. FCC allowed the plaintiff to take many sick days, receive disability leave, and use vacation time to supplement his disability leave. After these failed efforts, FCC requested that the plaintiff provide medical notice of any future accommodations. That request was reasonable. The plaintiff, however, failed to give FCC documented notice of any reasonable accommodation that would allow him to do his tasks. As such, the plaintiff is not a qualified individual because his attendance was sporadic and the plaintiff did not suggest a reasonable accommodation to remedy this situation and assure that his job functions would be fully performed. Therefore, the defendant is entitled to summary judgment on the ADA claims.[4]

4. The defendant also argues that the plaintiff is estopped from claiming that he can perform the essential functions of his job because he has applied for Social Security disability benefits. In applying for the benefits, Hypes represented that he was unable to work because of his disability and that he remains disabled. The cases are not conclusive on the issue. *See Overton v. Reilly*, 977 F.2d 1190, 1196 (7th Cir.1992) (a worker may meet the criteria to receive Social Security benefits and still be capable of working); *Garcia-Paz v. Swift Textiles, Inc.*, 873 F.Supp. 547, 554 (D.Kan.1995) (claim on a Social Security disability form that plaintiff was totally disabled estopped her from claiming that she could perform essential duties of the job). Since other grounds for the Court's decision exist, the Court does not address this issue.

### B. State Law Disability Claims

Under the LCRHP, La.Rev.Stat.Ann. § 46:2251 *et seq.*, an employer shall not:

Discharge or otherwise discriminate against an otherwise qualified individual with respect to compensation or the terms, conditions, or privileges of employment, on the basis of a handicap when it is unrelated to the individual's ability to perform the duties of a particular job or position.

La.Rev.Stat.Ann. § 46:2254(c)(2).[5] The employee's handicap must not render him incapable of performing the job, given reasonable accommodation. La.Rev.Stat.Ann. § 46:2254(c)(1); *Kelly v. Boeing Petroleum Services, Inc.*, 61 F.3d 350, 362 (5th Cir. 1995). The Court's earlier analysis also defines the state law result. Although the Court is cautious about applying federal jurisprudence to a state statute, the plain language of the LCRHP mirrors the federal statute. Consequently, the result must be the same.

The Court finds that, as a matter of state law, Hypes is not a qualified individual under Section 2254(c)(2). Hypes has not demonstrated that he can attend work regularly; he has not articulated a reasonable accommodation that would allow him to complete his job activities. This result respects the spirit of the statute, which is designed to:

assure that every individual within the state is afforded an equal opportunity to enjoy a full and productive life and that the failure to provide such equal opportunity, whether because of discrimination, prejudice, or intolerance[,] not only threatens the rights and proper privileges of its inhabitants but menaces the institutions, the foundation of a free democratic state, and threatens the peace, order, health, safety, and general welfare of the state and its inhabitants. The opportunity to obtain employment, education, housing, and other real estate and full and equal utilization of public services and programs without discrimination on the basis of a handicap is a civil right.

La.Rev.Stat.Ann. § 46:2252. When dealing with that social goal, the Fifth Circuit has written that handicap discrimination is only actionable "when it is produced by untoward motivation." *Kelly,* 61 F.3d at 363. The burden-shifting approach employed by the Fifth Circuit furthers the purpose of the statute by assuring that only employers with discriminatory intent are held liable for adverse actions against disabled employees. Consequently, the FCC is entitled to summary judgment on the state law discrimination claims.

### C. Age Discrimination Claims

The Court now turns to the plaintiff's alternative claim of age discrimination under both state and federal law. The ADEA prohibits disparate treatment of employees based on age:

It shall be unlawful for an employer—

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age.

29 U.S.C. § 623(a)(1). Similarly, Louisiana law makes it unlawful for an employer to fail to hire, limit, segregate or classify, or reduce the wage rate of an employee solely because of his age. The Fifth Circuit has held that the burden of proof under both statutes is the same. *Deloach v. Delchamps, Inc.*, 897 F.2d 815, 818 (5th Cir.1990).

The burden of proof for discrimination under Title VII is well established. *See United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 714–16, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983); *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253–55, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The standard essentially mirrors the standard for showing discrimination based on a disability under the ADA. To establish a prima facie case, the plaintiff

---

**5.** The plaintiff also sues under the general prohibition against employment discrimination found in Section 23:1006 of the Louisiana Revised Statutes. The Court believes that the results under both statutes would be the same and chooses to focus on the LCRHP because the law is more developed with regard to employment discrimination based on a disability.

must show: (1) that he was discharged; (2) that he was qualified for the position; (3) that he was within the protected class at the time of discharge; and (4) that he was replaced by someone outside the protected class. *Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503, 1504–05 (5th Cir.1988). If the plaintiff is successful, the burden shifts to the defendant to rebut the presumption of discrimination by offering a legitimate, nondiscriminatory reason for its disparate treatment. *Id.*

In this case, even if the plaintiff could establish a prima facie case, his claim would fail because FCC has stated a legitimate, nondiscriminatory reason for discharging the plaintiff: plaintiff's record of absences and falsifying records. To prevail on his claim, Hypes must demonstrate that the defendant's articulated reason is a pretext for unlawful discrimination. *Id.* The plaintiff can meet his burden by showing either that a discriminatory reason more likely motivated the defendant, or by showing that the defendant's reason is unworthy or belief. *Id.*

The plaintiff contends that age was merely a pretext for his firing and his failure to receive promotions. The defendant, however, claims that it was the plaintiff's clear record of absences, falsifications of records, failure to document absences and inability to stay on schedule that motivated its job actions. The plaintiff argues that his job performance was consistently rated as satisfactory. That characterization overstates his record.

The plaintiff was reprimanded by Kim Lee and Bill Burnell for excessive absences and tardiness, for falsifying time reports, and for taking excessive time to complete projects in April 1994.[6] He was given reasonable procedures to follow to improve his performance, his attendance and his record keeping. He does not argue that the rules imposed were unreasonable or impossible to comply with. In fact, the plaintiff agreed to improve his performance and provide a note from a physician explaining future absences. The plaintiff was even reassigned to another department with more direct supervision as a result of his poor performance.

Mr. Hypes was hired when he was 51 years old. According to Kim Lee, he was hired because of his experience and with the hope that he would be able to provide job leadership. In one of the plaintiff's earlier reviews, FCC suggested that he might be suited for management. The plaintiff now contends that Kim Lee had a personal agenda to replace older workers with younger workers. For support, the plaintiff notes that his replacement was 32 years old and that Kim Lee hired four team leaders under the age of 40.

The plaintiff does not offer additional evidence to prove Lee's unlawful animus. And so the plaintiff fails to meet his burden of proof. The defendant has articulated a reasonable nondiscriminatory reason for the actions taken against Hypes and has supported its reason with specific examples of the plaintiff's failure to live up to job demands. The plaintiff responds with mere speculation rather than competent evidence of discrimination. This record requires that FCC is entitled to summary judgment on the federal and state law discrimination claims.

### D. FMLA Claims

FMLA requires employers to provide a total of 12 workweeks of leave during any 12 month period for reasons including a serious health condition that makes the employee unable to perform the functions of the job. 29 U.S.C. § 2612(a)(1)(D). Furthermore, the employee can take intermittent leave when medically necessary. *Id.* (b)(1). Under this law, too, the employee has a duty to notify the employer of foreseeable medical treatments. *Id.* (e)(2).

The burden of proof in FMLA cases is once again the same as that applicable in ADA and ADEA cases. Thus, the plaintiff must prove: (1) he is a member of the protected class; (2) he was qualified to perform the job; (3) he was the victim of an adverse employment decision; and (4) that other employees who were not part of the protected class replaced him. *Oswalt v. Sara Lee*

---

**6.** The plaintiff signed a memorandum recording this meeting. Again, his signature acknowledges that the memorandum accurately reflects the discussion.

*Corp.,* 889 F.Supp. 253, 259 (N.D.Miss.1995), *aff'd,* 74 F.3d 91 (5th Cir.1996).

 The defendant draws attention to the requirement that the plaintiff must be a member of the protected class. FCC argues that the plaintiff failed to give any notice that he required FMLA leave. In *Manuel v. Westlake Polymers Corp.,* the Fifth Circuit spoke to what constituted notice under FMLA. 66 F.3d 758 (5th Cir.1995). FMLA does not require employees to invoke the statute by name. *Id.* at 763. FMLA only requires such notice as may be practical under the circumstances. The defining question is whether the employer has sufficient knowledge to ascertain that the employee's request for time off is the result of a medical condition. *Id.* at 764.

In this case, Hypes informed FCC of his illness and gave at least some documentation that he needed time off for his illness. The plaintiff could not give specific notice because his condition was extremely unpredictable. The fact that he never formally requested FMLA leave is not dispositive. In this case, FCC had sufficient notice of Hypes' ailment to determine if it qualified as FMLA leave.

 Assuming that Hypes can establish a prima facie case, the burden of course then shifts to FCC to articulate a nondiscriminatory reason for its employment action. Thereafter, the plaintiff must come forward with evidence to show that the employer's reason was a mere pretext for discrimination. *Oswalt,* 889 F.Supp. at 259. In this case, FCC, as illustrated above, has articulated a wholly reasonable reason to discharge Hypes. The plaintiff counters that he was subject to FMLA, took leave and was fired for being absent; therefore, the plaintiff concludes that his discharge must have been for an unlawful reason. The plaintiff, however, does not come forward with any evidence of discriminatory intent in the face of his poor attendance record. The plaintiff fails to note that not all of his absences were for medical reasons and that he had fallen behind in his work assignments. One would have to stretch to find pretext on this record.

Thus, the Court finds that summary judgment is appropriate because no issue of material fact exists on the claim for FMLA discrimination. The defendant has presented reasonable, nondiscriminatory and unrebutted reasons for its job action.[7]

Accordingly, the defendant's motion for summary judgment is GRANTED.

## ORDER AND REASONS DENYING RECONSIDERATION

Before the Court is the plaintiff's motion for reconsideration. For the reasons that follow, the plaintiff's motion should be DENIED.

### Background

David Hypes sued his former employer, First Commerce Corporation (FCC), claiming that he had been wrongfully discharged. Hypes asserted causes of action under both federal and state law. He argued that FCC had violated the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.,* the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623 *et seq.,* the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.,* the Louisiana Age Discrimination in Employment Act, La.Rev.Stat.Ann. § 23:971 *et seq.* (West 1985), and the Louisiana Civil Rights Act for Handicapped Persons (LCRHP), La.Rev.Stat.Ann. § 46:2251 *et seq.*

Plaintiff was hired by FCC on February 11, 1993 at the age of 51. In April 1994 Hypes's immediate Team Leader and the Independent Review Services Team Leader met with him to discuss his performance. During this meeting it was noted that the plaintiff had been excessively absent and late without excuse. Due to his absences, he had failed to complete reports and projects in a timely fashion. Hypes agreed to improve his performance and promised to provide a physician's note to explain future absences resulting from illness or medical appointments.

Hypes was subsequently reassigned to a different section of the company. He contin-

---

7. Having decided that summary judgment is proper against all of the plaintiff's claims, the Court does not need to address the defendant's additional request that summary judgment be issued on the availability of loss of consortium damages.

ued to miss work and come in late. On August 5, 1994, the plaintiff was diagnosed with chronic obstructive lung disease. FCC was duly notified of Hypes's condition and the bearing it would have on his job performance. In a letter dated September 19, 1994, the plaintiff's doctor stated that Hypes would be unable to travel, but did not suggest any other limitations. During the next two and one half months, the plaintiff continued to miss work. Hypes did not submit any additional medical documentation with regard to his need for accommodation by the defendant. The plaintiff was then terminated. The plaintiff asserted that he was fired because of age, disability, and illness discrimination. The defendant claimed that Hypes's termination was a result of his absenteeism.

The Court gave summary judgment, finding that David Hypes failed to establish essential elements of his case under both federal and state law. Both the ADA and the LCRHP require the plaintiff to prove that he was "qualified" for the job. Because Hypes's attendance was sporadic and because he did not articulate a reasonable accommodation that would allow him to complete his job activities, he failed to make out a prima facie case for disability discrimination. Similarly, with regard to the plaintiff's assertions of age discrimination, both state and federal law place the initial burden on Hypes to prove that he was qualified for the position. The Court held that even if the plaintiff had been able to establish this essential element of his case, the FCC defeated Hypes's claims by stating a legitimate, nondiscriminatory reason for his discharge. The Court rejected Hypes's claim under the FMLA. Although FCC had sufficient notice of the plaintiff's ailment, and even if Hypes had been successful in establishing the other elements of his prima facie case, FCC once again articulated a nondiscriminatory reason for its employment action.

David Hypes now argues that there exists an abundance of controversy with regard to many of the material facts, including 1) whether Hypes provided sufficient medical documentation for his absences, 2) whether regular attendance was necessary to make plaintiff "qualified" for the job, and 3) wheth-

er FCC provided adequate accommodation for the plaintiff's limitation. In light of these disputed facts, Hypes contends that the Court was wrong to grant the defendant's motion for summary judgment. He presents nothing new or persuasive.

### Law and Analysis

 David Hypes has asked the court to grant a motion under Federal Rule of Civil Procedure 59(e) to reconsider its grant of summary judgment in favor of FCC. Because of the interest in finality, motions for reconsideration may only be granted if the moving party shows there was a mistake of law or fact or presents newly discovered evidence that could not have been previously discovered. *Deutsch v. Burlington Northern R. Co.*, 983 F.2d 741 (7th Cir.1992).

### A. No Medical Explanation for Absenteeism

 David Hypes does not dispute the fact that he missed an extraordinary amount of time while employed by FCC. He repeatedly asserts that FCC's only officially stated reason for his termination was his excessive absenteeism. Hypes argues that as long as absences are medically justified and not in excess of the time allowed under the FMLA, absenteeism alone should not be a reasonable basis for termination under the ADA. The plaintiff argues that his absences were the result of illness. Hypes contends, therefore, that a genuine issue of fact exists as to whether he provided documentation from his physician regarding his illness-related absences.

The record shows that the last document FCC received from the plaintiff's physician was dated September 19, 1994. In this letter, Hypes's doctor notes that the plaintiff may have difficulty traveling. No other specific limitations are enumerated. Furthermore, the doctor testified that there is no medical reason why Hypes could not show up for work at the scheduled time and work throughout the day. Nevertheless, Hypes missed 9 full days and 15 half days of work after his doctor's last written communication. No documentation is recorded for any of these absences. Without such documentation, it is not evident that Hypes' absentee-

ism was medically warranted. Therefore, it can serve as a basis for his termination.

The plaintiff also asserts that the Court failed to properly apply the burden of proof for both disability and age discrimination. In situations where an employer offers legitimate reasons for a discharge, the burden shifts to the plaintiff to show that these reasons are a pretext for discrimination. *Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503, 1504–05 (5th Cir.1988). Hypes claims that although he was officially fired because of his absenteeism, the Court cites poor performance and record falsification as legitimate reasons for his dismissal. He argues that there is a lack of evidentiary support for these allegations and that a jury could reasonably find that these reasons were created as pretexts for discrimination.

While FCC does criticize Hypes's poor performance, it is only in conjunction with his absences and does not relate to the quality of the work that he actually completed. Likewise, the Court held that Hypes was not qualified to make claims under the ADA, the ADEA, their state equivalents or the FMLA because of his sporadic attendance, not because of a substandard work product. Although the Court did mention falsification of records and an inability to complete projects as legitimate, nondiscriminatory motivations for FCC's actions, these are not the principal justifications for Hypes's termination. Whether or not there is evidence regarding the plaintiff's alleged poor performance and record falsification is essentially irrelevant. Hypes was dismissed because of excessive absenteeism. This reason is legitimate and veils no discriminatory intent on the part of FCC.

### B. Attendance Is Necessary for Job Qualification

David Hypes contends that a factual issue exists as to whether his job necessitated regular attendance. To make out a prima facie case under the ADA, the ADEA, their state equivalents or the FMLA, a plaintiff must establish essentially the same four elements.[1] Of central importance is the plaintiff's ability to demonstrate that he is "qualified" for the job. Under the ADA, a "qualified individual" is a disabled person who, with or without reasonable accommodation, can perform the essential functions of his job. 42 U.S.C. § 12111(9)(A). The Court held that where attendance is an essential aspect of the job, an individual who has frequent absences is unqualified. *See Jackson v. Veterans Admin.*, 22 F.3d 277 (11th Cir.1994); *Tyndall v. National Education Centers, Inc. of Cal.*, 31 F.3d 209 (4th Cir.1994).

The plaintiff urges that FCC employees can and do take work home. Hypes argues that FCC failed to articulate why he had to be at work from 8:15 a.m. to 5:00 p.m. For these reasons, the plaintiff asserts that a jury should determine whether attendance is a legitimate reason for discharge or whether he could be accommodated by FCC.

The record shows that an essential part of the plaintiff's job entailed the review of confidential credit files which could not leave FCC. Although the files could be checked out during the day to be used at FCC after hours and on weekends, there is no evidence that Hypes made any effort to do this. FCC employees can perform certain administrative tasks at home. To complete his princi-

---

1. Under the ADA, one must establish that: (1) he suffers from a disability; (2) he is qualified for the job; (3) he was subject to an adverse employment action; and (4) he was replaced by a non-disabled person or was treated less favorably than a non-disabled person. *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir.1995). The language of LCRHP mirrors the federal statute. La.Rev.Stat.Ann. § 46:2251 *et seq.*

Under the ADEA, a plaintiff must show: (1) that he was discharged; (2) that he was qualified for the position; (3) that he was within the protected class at the time of discharge; and (4) that he was replaced by someone outside the protected class. *Bienkowski v. American Airlines,*

*Inc.*, 851 F.2d 1503, 1504–05 (5th Cir.1988). The Fifth Circuit has held that the burden of proof under La.Rev.Stat.Ann. § 23:971 *et seq.* is the same as the burden of proof for discrimination under Title VII. *Deloach v. Delchamps, Inc.*, 897 F.2d 815, 818 (5th Cir.1990).

The burden of proof under the FMLA requires a plaintiff to prove: (1) he is a member of the protected class; (2) he was qualified to perform the job; (3) he was the victim of an adverse employment decision; and (4) that other employees who were not part of the protected class replaced him. *Oswalt v. Sara Lee Corp.*, 889 F.Supp. 253, 259 (N.D.Miss.1995), *aff'd*, 74 F.3d 91 (5th Cir.1996).

724

pal tasks, however, David Hypes's presence at work was required.

### C. FCC Not Required to Accommodate Plaintiff

 Hypes asserts that FCC knew of his limitations but did nothing to accommodate him. Under the ADA, employers who fail to provide *reasonable* accommodation to the *known* physical or mental limitations of a *qualified* individual with a disability commit unlawful discrimination unless the accommodation would result in undue hardship. 42 U.S.C. § 12112(b)(5)(A) (emphasis added). Examples of such reasonable accommodations include: (1) making facilities accessible and usable; (2) acquisition or modification of equipment or devices; (3) job restructuring; (4) part-time or modified work schedules; and (5) reassignment to a vacant position. 42 U.S.C. 12111(9)(A) and (B).

When an employee's limitations are not obvious to the employer, the employee or his physician bears the burden of identifying the limitation and the appropriate accommodations. *Taylor v. Principal Financial Group, Inc.,* 93 F.3d 155 (5th Cir.1996). Hypes claims that FCC was notified of his limitations and that he requested flexible hours and modification in the dress code as appropriate accommodations. When the need for accommodation is not obvious, the employer may require that the employee provide documentation. 29 C.F.R. § 1630.9 (1995). In a letter from Hypes's physician, FCC was notified that Hypes's "physical limitations will have a bearing on his performance at the Bank." The physician noted a restriction on travel as the only appropriate accommodation.

Hypes asserts that, upon learning of his condition, FCC should have contacted his physician to find out if his performance would be limited in ways other than travel. Perhaps FCC should have made this phone call. However, the outcome of this case would not have been materially altered by such a call. Undoubtedly, David Hypes's illness affects his life adversely and creates substantial inconvenience in his daily activities. Nevertheless, his doctor testified that there is no medical reason why Hypes's attendance at work should have been impaired by his condition. Thus, Hypes presents nothing new. Because he was frequently absent for no medically documented reason and because attendance is an essential aspect of his job, Hypes cannot establish his qualification for the job. The ADA does not require an employer to accommodate an employee who is not qualified. Hypes's requests for flex time and a modified dress code were therefore unreasonable.

Federal Rule of Civil Procedure 56 makes summary judgment proper if the record discloses no genuine issue as to any material fact. "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The factual discrepancies upon which David Hypes bases his motion for reconsideration are either non-existent or immaterial. Accordingly, the plaintiff's motion is denied.